**Gil L. ALQUERO and Joyce Alquero, Appellants,**

v.

**Augustin B. DUENAS, Rosita D. Duenas and Capital Insurance and Surety Company, a foreign corporation, Appellees.**

No. 17971.

United States Court of Appeals

Ninth Circuit.

June 14, 1963.

Turner, Barrett & Ferenz, Howard G. Trapp, and W. Scott Barrett, Agana, Guam, and San Francisco, Cal., for appellant.

E. R. Crain, Agana, Guam, Schofield, Hanson, Bridgett, Marcus & Jenkins, Thomas M. Jenkins, and Edward L. G. Aguon, San Francisco, Cal., for appellee.

Before CHAMBERS, MAGRUDER and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

Gil L. Alquero on a motor scooter collided with the Duenas family car driven by the wife, Rosita. The collision happened on May 1, 1961, on a paved country road in Guam running from the village of Sinajana to the village of Afame. The accident occurred as the two vehicles approaching each other met at the top of a hill. The scene was in rolling hill country and there was considerable tropical growth on both sides of the road. The car and the scooter had been climbing (the car more so) to reach the top of the hill. The paved road surface was apparently about 13 feet six inches wide at the point of impact. At some points in the vicinity the pavement was as much as 15 feet wide. At no point is it indicated it was less than 13 feet. The pictures of the scene would indicate gravel on either side about level with the road.

Mrs. Duenas, a short woman, was at the wheel of a Pontiac sedan six feet four inches wide. There can be little doubt that her visibility of any oncoming traffic from the other side of the hill was somewhat restricted as she sat at the wheel due to the angle of the hill and her shortness. The greatest width of the scooter was at the handle bars: 28 inches. It would appear that neither saw the other for more than the instant before the crash, too late to do anything to avoid the collision.

The impact seems to have begun head-on, or nearly so, the left side of the handle bars and body of the scooter coming in contact with the left front light, or thereabouts, of the Pontiac. Then the scooter and the car seem to have caromed into a left hand side swipe for both. And Alquero's left leg and left arm were rather badly mangled—quite a natural consequence of the particular impact. If the progress described nine months later at the trial continued for six months more (the further time estimated by the doctor as necessary), Alquero has made a splendid recovery.

The Alqueros sued Mrs. Duenas and her husband Augustin, as well as the insurance carrier for the Duenases. Alquero asked for damages for the injury, loss of earnings, medical and hospital expenses, and the damage to his scooter. Also, Mrs. Alquero asked for $5,000.00 for loss of consortium. The Duenases counterclaimed for the damage to their Pontiac. Each driver said the other was negligent. The jury awarded nothing to anyone but the issue of Mrs. Alquero's consortium was not permitted to go to the jury. It is probable that the jury charged both drivers with negligence, but it is possible that the jury thought the incident was a pure accident for which no one was to blame. (No one has argued the latter proposition.)

Using the width of the paved road as 13 feet six inches, it is obvious that there was plenty of room on the paved road for both vehicles to meet and pass each other without event and without having to drive off the pavement.

A highway patrolman estimated the point of impact to have been from two to three feet north of the center line of the pavement. (This we get by the place on the map of the scene where he finally fixed the point of impact.)[1] Thus, if Alquero was entitled to half of the paved road, Mrs. Duenas was over on his side. Alquero claimed that as he was proceeding westerly the right side of his scooter was about one foot in from his right edge of the pavement. All this was a question of fact.

On their appeal the Alqueros made four points. The first one is a pleading point. We shall give it little space. Literally, in a way, the appellees-defendants by general denial contradicted something they had already admitted, as well as denying some things they intended to deny. A motion to strike was denied by the court. While it might have been better if the defendants had tidied up their answer, there is no showing of

---

1. Patrolman Garcia, though not a party, did show considerable confusion in his testimony. However, the jury may well have believed that the place on the map where he finally placed the point of impact was correct.

bad faith or that the basic issues were not clear. Further, there is no showing that the defendant suffered any burden of time or expense except the time counsel spent tilting with the answer by way of a motion to strike. The pretrial order did not supersede the pleadings but it makes clear that both sides clearly understood the issues. Cf. Fredrick v. United States, 9 Cir., 163 F.2d 536, 549; Peck v. Shell Oil Co., 9 Cir., 142 F.2d 141, 144.

■ The second specification is that the trial court "erred in rejecting on its own motion all evidence of the loss of consortium of appellant Joyce Alquero." The entire thrust of the argument in the opening brief is that by raising the point on its own motion the trial court became an advocate for the Duenas family. In their opening brief not one word is said as to existing law in Guam on the subject of consortium or about the desirability for paying for the loss thereof, or, if to be compensated, under what circumstances. But in their reply brief appellants come back and do devote a page and a half to the merits of the point. On the technical point of advocacy we find it without merit.

Under the circumstances, we confine appellants to the point they made in their opening brief and we do decline to consider whether Guam law ever did, does now or should permit recoveries for loss of consortium in cases such as this. We have seen no evidence that it ever has. And, suppose such recoveries should be allowed, should it be allowed the wife in a case where both parties were negligent or in a case where perhaps no one was negligent? In this case the loss of consortium would not be a complete one and apparently not much over a year in duration.

■ The third and fourth specifications present aspects of one basic question. Was there enough evidence to permit the court to instruct the jury on contributory negligence and particularly with reference to the Guam Motor Vehicle Code which provides that one must ordinarily drive one's vehicle "as close as practicable to the right hand edge or curb." [2] Here plaintiff Alquero at one juncture of his testimony did say he was traveling about a foot inside (i. e. to the left of the right hand side of the pavement). Maybe he was, but the jury did not have to think so. On this point of where, he was not consistent, although he may have not understood an earlier question. Officer Garcia had a good deal of trouble with the large scale map of the highway. He was appellants' witness. Obviously at first he was confused in his view of the map. But finally after much instruction on the map, he placed the point of impact slightly over five feet to the left of Alquero's right pavement edge (Alquero was proceeding westerly). The jury may have believed this was just

**2.** Section 23117.1 of the Motor Vehicle Code of Guam provides:
"Upon all highways any vehicle or bicycle shall be driven in the right hand lane for traffic or as close as practicable to the right hand edge or curb, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway."

Appellant cites several California cases interpreting Section 21654 of the California Vehicle Code, especially the first paragraph thereof which is as follows:
"Slow-moving vehicles. Notwithstanding the prima facie speed limits, any vehicle proceeding upon a highway at a speed less than the normal speed of traffic moving in the same direction at such time shall be driven in the right-hand lane for traffic or as close as practicable to the right-hand edge or curb, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway."

He who wrote the Guam section may have seen the California section. The California section has the elements of "slow-moving" vehicles and "moving in the same direction" not found in the Guam section. Thus, unrestricted by statutory language, we interpret the above Guam section as a "two-way" rule for meeting cars as well as a "one-way" section. Accordingly, the California cases are not helpful.

about it. If so, Alquero had five feet in which to operate his scooter, 28 inches wide.[3] Thus the instruction was obviously proper.

The judgment is affirmed.

---

3. If the jury accepted the officer's point of impact, then it did not believe that Alquero was within a foot of his edge of the pavement. Thus, the right edge of his scooter (the handle bars) would have been in three feet from the edge of the pavement.