687 F.2D 153
 11 Fed. R. Evid. Serv. 614
 Robert O. BRASSETTE,
v.
BURLINGTON NORTHERN INC., Third Party Plaintiff/Appellant,
v.
TRAILER TRAIN CORP., ACF Industries, and Bethlehem Steel
Corp., Appellees.
Robert O. BRASSETTE,
v.
BURLINGTON NORTHERN INC., Appellee,
v.
TRAILER TRAIN CORPORATION, Appellant,
ACF Industries, and Bethlehem Steel Corp.
Robert O. BRASSETTE,
v.
BURLINGTON NORTHERN INC., Appellee,
v.
TRAILER TRAIN CORPORATION, ACF Industries, Appellant,
and
Bethlehem Steel Corp.
 Nos. 82-1127, 82-1172 and 82-1173.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1982.
Decided Sept. 13, 1982.
 
 Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., for appellant & cross-appellee.
 James J. DeMars, Barlow, Johnson, DeMars & Flodman, Lincoln, Neb., for ACF Industries.
 William R. Johnson, Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for Trailer Train Corp.
 Woods, Aitken, Smith, Greer, Overcash & Spangler, Lincoln, Neb., for appellee Bethlehem Steel Corp.
 Before HEANEY and ARNOLD, Circuit Judges, and COLLINSON,* Senior District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 This is an appeal by the Burlington Northern Railroad, defendant and third-party plaintiff below, from the District Court's[1] judgment on jury verdicts in favor of three third-party defendants. The Burlington Northern alleges a number of errors in the proceedings below, and third-party defendants ACF Industries and Trailer Train Corporation have filed cross-appeals contesting the trial court's refusal to grant their motions for directed verdicts. We affirm the District Court on Burlington Northern's appeal and dismiss the cross-appeals as moot.
 
 I.
 
 2
 This litigation is a curious hybrid between an FELA action and a products-liability suit which is asserted in the form of a claim for contribution or indemnity. Plaintiff Robert Brassette brought this action against his employer, Burlington Northern, under the Federal Employers' Liability Act based on injuries he received while working in the defendant's railroad yards at Lincoln, Nebraska. His injuries, including serious burns, resulted from an explosion which occurred while Brassette was using a cutting torch to dismantle a hydraulic trailer hitch on one of the railroad's piggyback flatcars. The flatcar, which had been severely damaged in a derailment, was equipped with a hitch using pressurized hydraulic fluid to cushion piggyback truck trailers during shipment. Brassette and his partner, Roza, were attempting to remove the mangled hitch and other wreckage from the deck of the flatcar so that it could be flipped over and placed on another flatcar for shipment to a repair shop. In the process of "scrapping" the hitch-cutting it into manageable pieces with an acetylene torch-Brassette cut across four diagonal struts which held in place the hydraulic cushioning cylinders.[2]
 
 
 3
 Cutting the struts without first depressurizing the nitrogen gas and hydraulic fluid contained in the cylinders resulted in a considerable explosion. The cylinders, under 600 pounds per square inch pressure, blew apart, and the flammable fluid was sprayed over Mr. Brassette and ignited by his torch.[3]
 
 
 4
 The flatcar had been built by Bethlehem Steel Corporation for Trailer Train Corporation according to the latter's specifications. It was leased by Trailer Train to Burlington Northern. The car was equipped, as Trailer Train had required, with a Model 5 cushioned trailer hitch manufactured by ACF Industries. The railroad named Bethlehem Steel, Trailer Train, and ACF as third-party defendants in a third-party complaint which sought indemnity or, alternatively, contribution.
 
 
 5
 The issues will be addressed in the order in which they are raised by the appellant.
 
 II.
 
 6
 Burlington Northern first contends the district judge erred in refusing to give its proffered instruction on indemnity. It is quite clear, however, that the evidence presented did not support the requested instruction. "(U)nder Nebraska law noncontractual indemnity will be denied where a tortfeasor's conduct was actively or affirmatively negligent or where the tortfeasor's liability is based on actual wrongdoing as opposed to constructive or technical fault." Strong v. Nebraska Natural Gas Co., 476 F.Supp. 1170, 1174 (D.Neb.1979). The railroad's argument for indemnity is apparently premised on the assumption that the FELA case which the plaintiff proved against it was based on a reduced standard of negligence, and that its fault was therefore only technical or constructive. This assumption is without merit. The plaintiff's case did require him to prove negligence on the part of Burlington Northern. As Judge Urbom correctly instructed the jury, the defendant's duty was "to use ordinary care under the circumstances, in furnishing the plaintiff a reasonably safe place in which to work and to keep and maintain such place of work in a reasonably safe condition." Tr. 716. Moreover, the evidence is simply overwhelming that the railroad was actively negligent in giving this assignment to Brassette and Roza and in failing to supervise them. Although there was a conflict in the testimony as to exactly what Brassette was told to do,[4] the jury evidently believed Brassette's and Roza's testimony over that of their foreman, Mr. Heironymous. Heironymous also admitted that he did not examine the ACF maintenance manual for the hitch, which was kept in his office, before assigning the task to Brassette. That manual contained a rather specific warning that the cylinders and struts of the hitch should not be exposed to flame.
 
 
 7
 Under these circumstances, the District Court cannot be said to have erred in declining to instruct on indemnity.
 
 III.
 
 8
 Burlington Northern's second contention on appeal is that the trial court erred in refusing its proffered instruction number 59 on contribution among joint tortfeasors. That instruction stated, in pertinent part, as follows:
 
 
 9
 ... if you find that Burlington Northern is liable for the injuries sustained by plaintiff under the Federal Employers' Liability Act, and you further find that any or all of the third-party defendants are equally liable for the injuries sustained by plaintiff, you may also find that Burlington Northern is entitled to contribution against any or all of the third-party defendants to obtain from them the payment of their respective shares in consideration of their fault in bringing about plaintiff's injuries.
 
 
 10
 Designated Record 119. As authority for the instruction, the Burlington Northern relies on Royal Indemnity Co. v. Aetna Cas. & Surety Co., 193 Neb. 752, 229 N.W.2d 183 (1975), in which the Nebraska Supreme Court first held that a negligent joint tortfeasor is entitled to the remedy of contribution. The District Court declined to give this instruction, and we think it acted correctly,[5] since the requested contribution instruction was facially inconsistent with the Court's instruction on comparative fault, to which the railroad had agreed. See Tr. 733-34.
 
 
 11
 The Court's instruction on comparative fault was based on Neb.Rev.Stat. § 25-1151 (Supp.1978). This statute, apparently embodying long-standing Nebraska case law, establishes the slight-gross system of comparative negligence. See Woods, Comparative Fault 85-86 (1978). Under that system, contributory negligence does not bar recovery "when the contributory negligence of the plaintiff was slight and the negligence or act or omission giving rise to strict liability in tort of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff ...." Neb.Rev.Stat. § 25-1151 (Supp.1978). The trial judge applied this language to the third-party plaintiff's claims as well as to the plaintiff's original claim. Tr. 733-34. Burlington Northern did not object to this instruction; it conceded both in its Reply Brief, at p. 19, and at oral argument that the instruction correctly stated the law and that the third-party defendants were entitled to raise the defense. We can only say that the requested instruction No. 59 is patently inconsistent with the slight-gross system in that it refers to recovery based on the parties' being equally at fault.[6] The District Court did not err in declining to give inconsistent instructions.
 
 IV.
 
 12
 Burlington Northern's third contention is that the trial court erred in refusing to submit its breach-of-warranty claim to the jury. The District Court's decision on this matter was based on its view that the railroad had, as a matter of law, failed to meet the notice requirement for breach-of-warranty actions under the Uniform Commercial Code, Neb.Rev.Stat. § 2-607(3) (Vol. 6 Reissue 1980). Determination of the correctness of this ruling is unnecessary. As to Trailer Train and ACF we have no difficulty in concluding that any possible error in failing to submit the warranty issue was not sufficiently prejudicial to warrant reversal. As Burlington Northern's counsel conceded at oral argument, its three theories of recovery all boiled down to the same factual issues: whether the hydraulic cylinders contained a design defect and whether there was a failure to warn of the explosion hazard. The negligence and strict-liability instructions sufficiently placed these issues before the jury, and we have so held recently on similar facts. Strong v. E. I. duPont de Nemours & Co., 667 F.2d 682, 688 (8th Cir. 1981). See also Fisher v. Gate City Steel Corp., 190 Neb. 699, 703, 211 N.W.2d 914, 917 (failure to instruct on implied warranty not prejudicial when covered by instruction on strict liability) (dictum).
 
 
 13
 As to Bethlehem Steel, however, a slightly different situation is presented. Prior to trial the District Court filed a memorandum and order granting Bethlehem's motion for summary judgment on the warranty issue. Its view was that the eleven-month period between the accident and notification to Bethlehem of a potential claim was, as a matter of law, commercially unreasonable under the UCC and that, therefore, the claim was barred. Then, at the close of the third-party plaintiff's case, the Court directed a verdict for Bethlehem on the negligence and strict-liability claims on the basis of Moon v. Winger Boss Co., 205 Neb. 292, 287 N.W.2d 430 (1980). In that case the Nebraska Supreme Court adopted the following as a products-liability rule:
 
 
 14
 (A) manufacturer is not liable for injuries to a user of a product which it has manufactured in accordance with plans and specifications of one other than the manufacturer, except when the plans are so obviously, patently, or glaringly dangerous that a manufacturer exercising ordinary care under the circumstances then existing would not follow them.
 
 
 15
 205 Neb. at 299-300, 287 N.W.2d at 434. Judge Urbom held that the Moon rule insulates Bethlehem from liability based on negligence or strict liability in tort since it produced the flatcar in accordance with the detailed specifications of Trailer Train. We normally defer to the District Court's interpretation of the law of its own state. Moreover, there was absolutely no evidence that those plans or specifications were obviously or glaringly dangerous.
 
 
 16
 The Moon case, however, does not clearly preclude liability based on breach of implied warranty. The trial court in that case had submitted the case to the jury on the issues of negligence and strict liability, and a defendant's verdict was returned. In affirming the judgment the appellate court simply said that the defendant was entitled to a directed verdict. No mention is made of warranty. We conclude, however, that failure to submit the warranty issue to the jury as to Bethlehem was not error under the facts of this case.
 
 
 17
 The evidence adduced at trial quite clearly showed that any defect in design or failure to warn-assuming Bethlehem owed any duty to one in the plaintiff's position-was not the proximate cause of the accident and injuries. The reason is that there was an informational plate attached to the hitch which stated that the hitch is equipped with hydraulic cushions. Brassette testified that he did not see the plate because it was covered with road grime at the time of the accident. He further stated, however, that had he seen the plate he would not have cut the struts, but would "have gotten ahold of somebody and asked them about it." Tr. 49. The fact that the hitch was covered with road grime making the plate unnoticeable was therefore the proximate cause of the accident, and responsibility for this unfortunate circumstance obviously falls solely on the Burlington Northern. The railroad's failure to maintain the plate amounted to a supervening cause, the absence of which would have avoided the accident. See Strong v. E. I. duPont, supra, 667 F.2d at 687-688. We cannot, therefore, say that the District Court erred in refusing to submit the warranty issue to the jury.
 
 V.
 
 18
 Finally, the appellant contends Judge Urbom erred in limiting the testimony of Mr. Schwartz, who was offered as an expert in hydraulic engineering and accident reconstruction. Judge Urbom refused to allow Schwartz to opine whether a warning on the hitch as to exposure to flame was necessary to make the product reasonably safe. He concluded that Schwartz was not an expert on warnings and that his opinion testimony was not necessary to the jury's understanding of the case. We cannot say the Court's ruling was an abuse of his discretion as to expert testimony under Fed.R.Evid. 704. The question whether a warning is necessary is not ordinarily "the kind of issue on which expert assistance is essential for the trier of fact," Strong v. E. I. duPont, supra, 667 F.2d at 686.
 
 
 19
 We therefore affirm the judgment in No. 82-1127. This disposition makes unnecessary any consideration of the cross-appeals, Nos. 82-1172 and 82-1173. They are dismissed as moot.
 
 
 20
 It is so ordered.
 
 
 
 *
 The Hon. William R. Collinson, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Hon. Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 The Court was not furnished with photographs of these hydraulic cylinders, but we imagine them as something like very large, pressurized shock absorbers which functioned to cushion the cargo in the attached trailer during shipment
 
 
 [3]
 For his injuries Brassette recovered a verdict against the Burlington Northern under the FELA. That verdict is not at issue in this appeal
 
 
 [4]
 Brassette testified that his foreman, Heironymous, simply told him to "scrap (the hitch) the best way you can" and did not say exactly where to cut. Tr. 40. Heironymous, on the other hand, contended that he told Brassette not to dismantle the hitch at all but simply to remove it from the car. Tr. 160, 161, 185. In fact, a major portion of the hitch had been removed and dismantled when the explosion occurred
 
 
 [5]
 The District Court's reasons for doing so are not entirely clear, since the instruction conference was held off the record, a practice which this Court has recently had occasion to criticize, see Ratchford v. Manchester Life & Cas. Management Corp., 679 F.2d 741, 746 n.9 (8th Cir. 1982). In its memorandum denying Burlington Northern's motion for a new trial, the Court stated that contribution among joint tortfeasors had neither been pleaded nor proved. The Court apparently misspoke, since the third-party complaint includes a prayer for contribution or indemnity. In any event, the Court was correct in declining the defendants' proffered instruction number 59 for the reasons set out in the text
 
 
 [6]
 We do not pretend to know how the Nebraska Supreme Court would apply the newly found remedy of contribution under the rather unusual circumstances of this case, where one of the supposed joint tortfeasors is a third-party plaintiff and has an agency relationship with the plaintiff as his employer. We know only that the trial court should not give an instruction which is plainly inconsistent with another instruction which the parties agree correctly states applicable law. At the oral argument Burlington Northern seemed to say that it had not asked the District Court for two inconsistent instructions, that its position had been that the instruction based on equal fault be given, but that, failing that, the slight-gross instruction be given. The record does not bear out this contention