Kenneth Daniel HAYNES, Jr. and Alma
Jane Haynes, Appellants,

v.

AMERICAN MOTORS CORPORATION
and Jeep Corporation, Appellees.

No. 81–2144.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1982.

Decided Nov. 3, 1982.

E.C. Gilbreath, Jones, Gilbreath & Jones, Fort Smith, Ark., for appellants.

Davis, Cox & Wright, Fayetteville, Ark., for appellees, American Motors Corp. and Jeep Corp.

Before BRIGHT, HENLEY * and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Kenneth and Alma Haynes appeal from a judgment in favor of American Motors Corporation and Jeep Corporation in this action brought following the overturn of their Jeep CJ–5 driven by Alma. The case was submitted to the jury on the theories of negligence, strict liability and breach of warranty. The Haynes claim that the district court[1] erred in refusing to allow evidence of misrepresentations in television commercials, and in refusing to instruct on the misrepresentation. They make an assortment of other claims of error in admission and refusal of evidence, and in instructions given and refused. Having carefully considered the claimed errors, we affirm.

The Haynes, self-styled by Kenneth as the Daniel Boone type, purchased a 1973 model Jeep CJ–5 in June 1977. It did not have a roll bar, and he bargained vigorously but unsuccessfully to have one added. Kenneth testified that television commercials he had seen demonstrated the Jeep as a good all-around vehicle, particularly on back roads, and demonstrated a man taking his wife to dinner. He bought the car primarily to use off the road, but it became the family car. Alma said the Jeep was bought because they liked to go fishing and over bad roads, but to her the commercials simply showed "reckless driving" and depicted the Jeeps jumping over hills. The Jeep became the family favorite and both Alma and Kenneth would usually drive it by choice.

On October 23, 1978, Alma was taking her little girl to school in the Jeep CJ–5. Her son and a friend shared the front passenger seat with Alma. The daughter sat in the back of the Jeep on the right rear wheel well. Alma started down the steep slope of a wet asphalt highway and saw two pick-up trucks stopped at the foot of the hill, completely blocking the road. She applied the brakes and the rear end of the Jeep went to the right because of the slick road. It did not fishtail. The Jeep slid to the left, went into a roadside ditch and rolled over. Mrs. Haynes was thrown from the vehicle, and sustained injuries that resulted in paraplegia.

One of the drivers at the foot of the hill gave the speed of the Jeep as it came down the hill as 45 miles an hour. He further testified that the back end came around so that it was just a little ahead of the front end.

While the testimony of the experts differed, there seemed to be some consensus that once the Jeep left the road, the wheel of the Jeep was "tripped" causing the roll. There was a dispute as to whether the Jeep rolled over sideways or flipped over, front end over rear end.

## I. Misrepresentation

Kenneth and Alma Haynes contend that the district court erred in refusing to allow them to submit evidence of television commercials with respect to their claim of misrepresentation, and improperly refused to allow their expert witnesses to comment on the commercials. They argue further that the district court improperly refused their jury instruction on the misrepresentation issue, which was based on § 402B, Restatement (Second) of Torts.

Plaintiffs contend the television commercials led them to believe that their CJ–5 would not roll over when subjected to the driving conditions under which Alma Haynes' accident took place.

■ A number of the commercials dealt with the Jeep Cherokee, and thus had no relevance in this case, which involves a Jeep CJ–5. Those commercials dealing with the CJ–5 also had little relevance since they depicted the CJ–5 in off-the-road settings, climbing steep hills and traversing rough terrain. In contrast, Alma Haynes' accident occurred when her CJ–5 skidded off

---

* The Honorable J. Smith Henley assumed senior status June 1, 1982.

1. Judge William R. Overton, United States District Court for the Western District of Arkansas.

rain-slick pavement and into a ditch. Nothing in the commercials implied that the CJ–5 would not roll over when subjected to the kind of conditions under which the Haynes' accident occurred. The trial court properly excluded these commercials, which would have served merely to confuse the issues before the jury[2] and the court properly refused to allow plaintiffs' expert to comment on the commercials.

■ We also conclude that the district court did not err in refusing plaintiffs' requested instruction on misrepresentation. The court found that there had been no evidence that in purchasing their Jeep plaintiffs had relied on any representations made by defendants.[3] Mr. Haynes testified that the commercials had influenced him to buy the CJ–5 and said that the CJ–5 looked like "a good all around vehicle," and that one of the commercials "showed a guy taking his wife to dinner." However, the commercials did not show the CJ–5 under the sort of conditions which caused the accident in which Alma Haynes was injured, and thus provided no basis for the Haynes' misrepresentation claim. There is no duty to instruct on matters not supported by the evidence. *Gisriel v. Uniroyal, Inc.,* 517 F.2d 699, 703 (8th Cir. 1975); *Brassette v. Burlington Northern, Inc.,* 687 F.2d 153 at 156 (8th Cir. 1982); *Hamilton v. Pan American Southern Corp.,* 238 Ark. 38, 378 S.W.2d 652, 653 (1964).

## II. Evidence Questions

### A.

Kenneth and Alma Haynes contend that the district court erred in refusing to allow Robert Anderson, one of their expert witnesses, to state his opinion on whether defendants should have warned potential CJ–5 buyers of the vehicle's alleged rollover propensity. The district court found that Anderson was without expertise in this particular area, and that his opinion on this issue would not be helpful to the jury.

■ "Admission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial court, and the trial court's decision should not be reversed unless found to be 'manifestly erroneous.' " *Soo Line Railroad Company v. Fruehauf Corp.,* 547 F.2d 1365, 1374 (8th Cir. 1977). The standard for admissibility of expert testimony is whether that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Substantial testimony had already been introduced regarding the Jeep's high center of gravity, its over-steer tendency, and its apparent high propensity to roll over. From this evidence, the jury was capable of forming its own conclusion as to whether defendants should have warned buyers of the Jeep's dangerous characteristics. The expert opinion which plaintiffs sought to introduce would have added nothing to the evidence already before the jury. *Brassette,* 687 F.2d at 158; *Strong v. E.I. DuPont de Nemours Co., Inc.,* 667 F.2d 682, 686 (8th Cir. 1981). Another of plaintiffs' experts, John N. Noettl, was allowed to testify that buyers should have been warned of the CJ–5's handling characteristics and its propensity to roll over. Anderson's testimony on this same issue would thus have been cumulative. We cannot conclude that the district court erred in refusing to allow Robert Anderson to testify on whether a warning should have been given.

### B.

■ Kenneth and Alma Haynes contend that the district court erred in refusing to

---

**2.** Plaintiffs rely on the case of *Leichtamer v. American Motors Corporation,* 67 Ohio St.2d 456, 424 N.E.2d 568 (1981), in which the Ohio Supreme Court ruled that Jeep commercials were admissible. The *Leichtamer* case, however, involved plaintiffs who were engaged in off-the-road use of their Jeep when their accident occurred. They were using their Jeep in substantially the same way that it had been advertised.

**3.** The district court also refused plaintiffs' instruction on this issue because the court did not believe that § 402B had been adopted in Arkansas. Because we conclude that the lack of relevant evidence on misrepresentation supported the district court's refusal to instruct on this issue, we need not reach the issue of whether § 402B of the Restatement (Second) of Torts accurately reflects Arkansas law.

admit into evidence the Operator's Manual of the M–151 Military Jeep, which warned that these vehicles could go out of control or roll over when turned at speeds of more than twenty miles per hour. Plaintiffs sought to use this as an illustration of the type of warning that they could and should have received regarding their Jeep.

Plaintiffs contend that the CJ–5 was "substantially similar" to the M–151. According to the testimony of plaintiffs' own witness, however, the M–151 had independent suspension on all four wheels, as opposed to the CJ–5's solid axles. This was a critical difference since testimony established that the M–151's rear independent suspension caused the vehicle's track width to narrow and its center of gravity to rise during turning maneuvers. Plaintiffs' own witness testified that a high center of gravity and a narrow track width are among the most important factors which contribute to a vehicle's propensity to roll over. In addition, testimony established that the federal government would not allow surplus M–151's to be sold to civilians because of the vehicle's dangerous characteristics, while the M–38, another military Jeep which was closer in design to the CJ–5, was allowed to be sold to the public.

The trial judge has wide discretion in ruling on the admissibility of evidence, and his decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion. *E.I. DuPont de Nemours & Co. v. Berkley & Co., Inc.,* 620 F.2d 1247, 1272 (8th Cir. 1980); *Auto-Owners Insurance Company v. Jensen,* 667 F.2d 714, 722 (8th Cir. 1981). In this case the trial court found that the M–151 manual was only "remotely relevant" and "potentially prejudicial". In view of the important differences between the M–151 and the CJ–5, we cannot conclude that the trial judge abused his discretion in refusing this exhibit.

Plaintiffs' witness Robert Anderson was allowed to testify at some length about the characteristics of the M–151. He testified that the military had warned their personnel about the M–151's propensity to rollover, and that the rate of accidents involving M–151's dropped dramatically after warnings were issued. In light of this testimony, plaintiffs are not prejudiced by the exclusion of the manual itself.

### C.

■ Kenneth and Alma Haynes contend that the district court improperly refused to admit the August 1979 edition of a Jeep CJ–5 driver's manual printed by defendants. The manual contained information on how to drive the Jeep CJ–5 and noted that the driving techniques needed for the vehicle differed from those required for two-wheel drive cars. Plaintiffs argue that they should have been allowed to introduce this exhibit to show defendants' "current and existing negligence" in failing to provide plaintiffs with a similar warning about the particular handling requirements of their vehicle. The district court refused the manual because it constituted evidence of a remedial measure taken subsequent to the Haynes' accident which, if taken before the accident, might have made the accident less likely to occur.

We cannot conclude that the district court erred in refusing this exhibit. The publication of the manual at issue was subsequent both to the manufacture of the Jeep owned by the Haynes, which occurred in 1972, and to the accident itself, which occurred in 1978. The warnings contained in the manual constitute subsequent remedial measures which, under Federal Rule of Evidence 407[4] are not admissible to show negligence. Since plaintiffs' apparent motive for attempting to put the exhibit into

---

4. Arkansas has enacted Uniform Rule of Evidence 407, which is almost identical in wording to Federal Rule of Evidence 407. In addition, Arkansas case law firmly establishes that the state follows the general rule of excluding evi- dence of subsequent remedial measures when it is offered to prove negligence. *Johns v. Pomtree,* 240 Ark. 234, 398 S.W.2d 674 (1966); *Gist v. Meredith Marine Sales & Service,* 272 Ark. 489, 615 S.W.2d 365 (1981).

evidence was to show negligence, the exhibit was properly excluded.[5]

### D.

■ Kenneth and Alma Haynes contend that the district court erred in refusing to allow into evidence Federal Standard 515/25, a federal regulation requiring vehicle manufacturers to install roll bars in utility vehicles which were going to be purchased by the federal government and setting out requirements relating to the strength and size of these roll bars.

Plaintiffs' own expert, Dr. Michael Kaplan, testified that Federal Standard 515/25 was not in effect at the time plaintiffs' CJ–5 was manufactured. This standard was in effect for a short time during the 1960's, but was rescinded before 1972.

Prior to plaintiffs' attempt to admit this exhibit there had been extensive testimony as to the effectiveness of roll bars in protecting passengers, as well as testimony on the existence of other roll bar standards. Under the circumstances, we cannot conclude that the trial court erred in refusing to admit this exhibit.

■ Plaintiffs' contention that it was improper for the court to exclude Federal Standard 515/25 because defendants withdrew their objection to the exhibit is without merit. It is not improper for a court to exclude evidence on its own motion. *Chicago & N.W. Ry. Co. v. Kelly,* 84 F.2d 569, 572 (8th Cir. 1936); *Alquero v. Duenas,* 319 F.2d 40, 42 (9th Cir. 1963); *American Workmen v. Ledden,* 196 Ark. 902, 120 S.W.2d 346, 348 (1938).

### E.

■ Kenneth and Alma Haynes next contend that the district court erred in allowing defendants' witness Terry Willis to testify as to how Alma Haynes' accident occurred and as to how her body reacted during the accident. Plaintiffs contend that Willis was not qualified to testify on accident reconstruction or biomechanics, and that his testimony, based on the Jeep's speed at the top of the hill and the markings left on the vehicle, was "unscientific".

Dr. Willis, a Ph.D. in Engineering, discussed his educational background and experience and described the factors considered in his analysis. A trial judge has broad discretion to determine the qualifications of expert witnesses, and the trial court's ruling on whether an expert should be allowed to testify can be overturned only if there is an abuse of discretion or a clear error of law. *Gisriel,* 517 F.2d at 702; *Arkansas Land & Cattle Company v. Anderson-Tully Company,* 248 Ark. 495, 452 S.W.2d 632, 634–35 (1970). We cannot find that the trial court abused its discretion in allowing Willis to testify in this case. Plaintiffs' objections to Dr. Willis' qualifications went merely to the weight of the evidence rather than to the admissibility of the testimony. 517 F.2d at 702.

■ Plaintiffs also argue they were improperly prevented from asking Dr. Willis about four other Jeep roll over cases on which he was working, contending that questioning on these cases would have revealed that Dr. Willis was not a qualified accident reconstructionist. Plaintiffs' at-

---

**5.** Plaintiffs also attempted to introduce this exhibit to show the small expense and the feasibility of issuing the warnings contained in the manual. In order to be admissible for this purpose, however, feasibility must be controverted. In this case, there was no indication that feasibility was in issue, and thus the exhibit was properly refused if offered for this purpose.

Plaintiffs' case contained both negligence and strict liability counts. However, there is no indication in the record that plaintiffs attempted to admit this exhibit on the strict liability issue, and plaintiffs do not argue that the exhibit should have been admitted under this theory. It is thus unnecessary for the court to decide whether the exhibit would have been admissible on the strict liability count. Previous decisions of this court indicate that evidence of subsequent remedial measures is admissible under this theory. *See: Robbins v. Farmers Union Grain Terminal Association,* 552 F.2d 788 (8th Cir. 1977); *Farner v. Paccar, Inc.,* 562 F.2d 518 (8th Cir. 1977); *Unterburger v. Snow Company, Inc.,* 630 F.2d 599 (8th Cir. 1980); *McGowne v. Challenge-Cook Brothers,* 672 F.2d 652 (8th Cir. 1982).

torney questioned Dr. Willis at some length about several other Jeep rollover cases with which Dr. Willis was involved. The only time this questioning was limited was when plaintiffs' attorney attempted to elicit testimony on the types of injuries which were involved in these cases. We conclude that the district court did not err in its rulings refusing plaintiffs' attorney the right to inquire about these injuries.

### III. Instruction Issues

#### A.

Kenneth and Alma Haynes contend that the district court erred in refusing their requested jury instruction on 15 U.S.C. § 1411. This statute provides in part as follows:

If a manufacturer—

(1) obtains knowledge that any motor vehicle or item of replacement equipment manufactured by him contains a defect and determines in good faith that such defect relates to motor vehicle safety . . . he shall furnish notification to the Secretary [of Transportation] and to owners, purchasers, and dealers, in accordance with section 1413 of this title, and he shall remedy the defect or failure to comply in accordance with section 1414 of this title.

Plaintiffs contend that the CJ–5's propensity to roll over constitutes a defect of the kind covered by section 1411. They argue that defendants' failure to provide them with notification of this defect in accordance with section 1411 constituted proof of negligence, and that the jury should have been so instructed.

Section 1411 applies only when a defendant vehicle manufacturer has "obtained knowledge" of a defect, and has determined in good faith that it relates to motor vehicle safety. The knowledge and opinions in the

trial testimony of plaintiffs' three expert witnesses that Jeep CJ–5's had a higher propensity to roll over than did other vehicles, based in part on studies which had been done by independent research organizations, cannot be attributed to defendants. When defendants finally learned of these tests, they strongly disputed the studies' conclusions and considered the studies inaccurate and unreliable.

Plaintiffs did not establish that at the time Alma Haynes' accident took place defendants had "obtained knowledge" of a defect which they had determined in good faith was related to motor vehicle safety. For this reason, we find that the district court did not err in refusing to instruct on 15 U.S.C. § 1411.[6]

#### B.

Kenneth and Alma Haynes also complain that the trial court improperly instructed the jury on Arkansas statutes 34–2804(a) and 34–2805. Plaintiffs first contend that the trial court improperly instructed the jury that 34–2804(a)[7] provided a defense to plaintiffs' negligence claim as well as to their strict liability claim. The court had carefully instructed the jury on the differences between strict liability and negligence. The instructions did not inform the jury that 34–2804(a) was applicable to both theories. The court had explained that the finding that a product was "unreasonably dangerous" was an element of the strict liability theory, and had defined the term "unreasonably dangerous." We have reviewed the trial court's instruction on 34–2804(a) and have concluded that it clearly informed the jury that the factors enumerated in 34–2804(a) were to be considered in regard to whether a product was unreasonably dangerous. In view of the court's instruction on the elements of plaintiffs'

---

**6.** We express no opinion on whether the alleged high propensity of CJ–5's to roll over is the sort of defect covered by 15 U.S.C. § 1411.

**7.** 34–2804(a) provides:

Compliance by a manufacturer or supplier with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards of design, inspection, testing, manufacture, labeling, warning or instructions or [for] use of a product, shall be considered as evidence that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.

strict liability claim, we conclude that the trial court did not err in its instruction on 34–2804(a).

Plaintiffs also contend that the trial court's instructions unduly emphasized the "state of the art" defense, and that the trial court should not have instructed on either 34–2804(a) or 34–2805 because those statutes set forth rules of evidence rather than substantive rules of law. We find no merit in either of these arguments.

## CONCLUSION

We have carefully considered the numerous contentions advanced by the Appellants, Kenneth and Alma Haynes, and we find the rulings of the district court not to be erroneous. The judgment is affirmed.