Theresa REY, Appellant,

v.

CITY OF FREDERICKTOWN, MISSOURI, a Municipal Corporation; Jerry Umfleet, City Marshal of Fredericktown, and George Despain, Appellees.

No. 83–1395.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1983.

Decided March 16, 1984.

John E. Bell, St. Louis, Mo., for appellant.

Evans & Dixon, Robert J. Krehbiel, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HUNTER,[*] Senior District Judge.

FAGG, Circuit Judge.

Theresa Rey seeks to recover compensatory and punitive damages from two police officers and a municipality for the death of her child. She alleges that, under 42 U.S.C. § 1983, her son was deprived of his life under color of state law without due process, and alternatively, that under the Missouri wrongful death statute, his death was caused by defendants' negligence. Rey appeals from a jury verdict rendered in favor of the defendants.

This case stems from a marital dispute between Theresa Rey and her husband, Dean Rey. On September 23, 1980, while her husband was at work, Theresa Rey left her home in St. Louis, took her four-year-old son, and went to stay with her sister and her husband, Ellen and Charles Mallon, in Fredericktown, Missouri. Concerned that her husband would retaliate when he discovered that Theresa and his son had left, Theresa Rey contacted the police immediately after arriving in Fredericktown. She explained that there might be trouble and requested that an officer be sent to the Mallon home. Her fears were well founded; about ten minutes after contacting the police, Dean Rey forcibly entered the Mallon home carrying a pistol in his hand. Dean Rey told Theresa that she and the child were going back to St. Louis, and if they did not, he would shoot them. Dean Rey also threatened to kill the Mallons and their children.

Testimony conflicts as to the nature of the circumstances when the police officers arrived. According to Rey, it should have been apparent to the officers that it was a stressful situation. Rey maintains that she pleaded with Officer Despain not to let Dean Rey take her son. She also claims that the officers were apprised of the fact that Dean Rey had a gun.

According to the police officers, when they arrived at the scene, Dean Rey was holding the child and was calm and cooperative. The child was calm and not crying. Theresa Rey and the Mallons, although upset, were, for the most part, composed. Officer Despain testified he was first approached by Charles Mallon who complained that Dean Rey had broken a win-

[*] The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

dow and had threatened him without·giving any particulars, and should be arrested. The officer explained his inability to do so since the alleged crime was only a misdemeanor which required the issuance of a complaint from the prosecutor's office before any action could be taken. Officer Despain next sought to discover the basis of the domestic quarrel. After advising Dean Rey that he could not compel Theresa Rey to accompany him back to St. Louis, the officer inquired into the welfare of the child. Once assured that the child would be cared for while Dean Rey was working, Theresa Rey, according to the officer's testimony, verbally consented to the child's leaving with Dean Rey. The officers further testified that during all of their conversations with the parties nothing was said concerning Dean Rey carrying a gun, nor did they see a gun. Having satisfied themselves that the immediate differences had been resolved between the adults and that the child was in no danger, the officers permitted Dean Rey to leave with his son. According to the officers none of the parties expressed an objection to this decision.

Dean Rey placed the child in his car without interference. Theresa Rey returned to the house to collect the child's clothing and toys which she then placed in the car. To place the toys in the car, Theresa Rey got the keys from Dean Rey and then returned them to him. Dean Rey left and a short time later, Rey shot and killed his son and then committed suicide.

Rey first contends that the district court erred in granting defendants' pre-trial motion to transfer the case from the Eastern Division of the Eastern District of Missouri, where Rey resided, to the Southeastern Division of the Eastern District of Missouri, where all the defendants resided. The general venue provision, 28 U.S.C. § 1391(b), provides that civil actions not founded solely on diversity can only be brought in the district in which all the defendants reside, or the cause of action arose, except as otherwise provided by law. Under the language of this general provision, then, venue would have been proper in any division of the Eastern District of

Missouri. There are more specific venue provisions, however, for districts that are composed of more than one division. 28 U.S.C. § 1393(a) requires a civil action, ·not of a local nature, against a single defendant in a district having more than one division to be brought in the division in which that defendant resides. 28 U.S.C. § 1393(b) provides that under similar circumstances involving multiple defendants living in different divisions, actions may be brought in any such divisions. There is no statute expressly addressing the situation in this case, where there are multiple defendants, all residing within the same division of a district.

■ The import of sections 1393(a) and 1393(b) is that in districts that have more than one division, all actions should be brought within a division where a defendant resides. There is no logical reason for a different result to obtain when multiple defendants all reside in a particular division rather than when a single defendant resides in that division. This conclusion is supported by the reasoning in *McCroskey v. Texas Marine Survey Co., Inc.*, 87 F.R.D. 691, 693 (S.D.Tex.1980):

> [A] pragmatic and logical construction of 28 U.S.C. §§ 1393(a) and (b), the division venue statute, read together with 28 U.S.C. §§ 1391(a) and (c) compels the conclusion that a suit brought against multiple defendants residing in a single division must be brought in that division notwithstanding the express language in 28 U.S.C. § 1393(a).

*See also Roark v. Bauer*, 181 F.Supp. 330, 331–32 (N.D.Ohio 1960). Professor Moore reaches a similar conclusion. He notes that literally there is a hiatus in the venue provisions concerning a situation such as this in which multiple defendants reside in the same division of the same district, but nevertheless concludes that "[i]f the multiple defendants all reside in the *same* division of the *same* district, venue, geared to residence, is proper only in that division, and not in some other division of the same district." 1 *Moore's Federal Practice*

§ 0.143[4] at 1466 n. 5 (2d ed. 1983) (emphasis in original). Hence, where multiple defendants reside in the same division they should be regarded as a "single defendant" for purposes of venue under section 1393(a). Consequently we conclude that it was not improper to transfer the case to the Southeastern Division of the Eastern District of Missouri, since all the defendants resided in that division.

Next, Rey argues that the evidence was not sufficient to create an issue of fact for the jury. In this circuit it is well established that a directed verdict or judgment notwithstanding the verdict should be granted only where the evidence is such that reasonable persons could not differ as to the verdict. *Mulholland v. Schneider Service Co., Inc.*, 661 F.2d 708, 711 (8th Cir.1981). There was a serious factual dispute at trial concerning the events at the Mallon home after the officers arrived and whether the officers reasonably could have perceived danger to the child. No doubt the evidence was such that the jury could have rendered a verdict for Rey rather than the defendants. The evidence was not so one-sided, however, that we can say, as a matter of law, that the evidence only permitted a verdict for Rey; there was sufficient contrary evidence to present a jury question.

Rey also argues that the district court erred in denying her alternative motion for a new trial. A motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court and its decision will be reviewed only upon a clear showing of abuse. *Burnett v. Lloyds of London*, 710 F.2d 488, 489–90 (8th Cir.1983). "Ordinarily, no error can be predicated upon the denial of such a motion for new trial." *Minnesota Mutual Life Insurance Co. v. Wright*, 312 F.2d 655, 659–60 (8th Cir.1963). In weighing the evidence, the trial judge noted there was no objective showing that the jury's verdict was based on considerations other than the evidence presented and he denied the motion. The denial of this motion was not an abuse of discretion.

Rey has also raised various other arguments, including the trial judge's refusal to ask certain questions during voir dire, the failure to give a requested jury instruction, and the impropriety of defense counsel's closing argument. We have carefully considered each of these claimed points of error and find them to be without merit.

Accordingly, the judgment of the district court is affirmed.

Affirmed.