SCNO BARGE LINES, INC., Appellee,

v.

ANDERSON CLAYTON & CO., Appellant.

No. 83-1963.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1984.

Decided Oct. 15, 1984.

Rehearing Denied Nov. 9, 1984.

John P. D'Ambrosio, Elmsford, N.Y., for appellant.

James F. Mauze, St. Louis, Mo., for appellee.

Before HEANEY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

SCNO Barge Lines, Inc., obtained a judgment against Anderson Clayton & Co. on a claim for breach of an agreement to use SCNO's barges to transport soybean meal. Anderson Clayton appeals and argues that the district court erred in granting a motion in limine with respect to the earlier contracts between Anderson Clayton and

SCNO, that SCNO did not make a prima facie case for breach of contract and that the verdict is against the weight of the evidence. We affirm the judgment of the district court.[1]

SCNO had contracted with Anderson Clayton to provide barges for the transportation of soybean meal from Vicksburg, Mississippi, to New Orleans since 1975. On August 29, 1980, an agreement was signed by the parties providing for SCNO to provide an average of eight barges per month starting October 6, 1980, and ending the week of September 28, 1981.[2] During the first four and a half months of the period, Anderson Clayton used thirty-two barges and paid the contract price and fuel escalation provided in the contract. Anderson Clayton then shut down its soybean meal processing plant in early March, 1981, and did not use the remaining 64 barges.

On November 4, 1981, SCNO's sales representative, Tucker Kleitsch, discovered that Anderson Clayton had reopened its processing plant and had commenced shipping soybean meal in competing barges. He called Wayne Pierce of Anderson Clayton to ask for an explanation, and as a result Pierce proposed to start using SCNO's barges immediately. They agreed that Kleitsch would develop a price for the barges, and Kleitsch testified that there would be a new agreement taking into consideration the 64 barges not used under the earlier agreement. Kleitsch testified from a memorandum that he had prepared that Pierce proposed to start loading SCNO barges right away and would load "as many as he can." According to Kleitsch, Pierce stated that if he had a short season such as last year, he "cannot guarantee that he would complete the contract, but he feels that there is a chance."

It was necessary that both Kleitsch and Pierce check with their superiors. There was another call on November 6 in which the figures were made specific. The following Monday Kleitsch stated that Pierce called him and told him that they had a deal. Kleitsch testified that the agreement was that Anderson Clayton would load the 64 barges at $7.02 per ton, which was not subject to fuel escalation, and that the terms and conditions of the old contract applied to the new one. The freight rate was averaged between March, when Anderson Clayton stopped loading barges, and September which was at the end of the contract. Kleitsch then wrote a letter which attached an addendum to confirm the agreement.[3]

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

2. The August 29, 1980 agreement provided as follows:

> The movement of meal, in bulk, from f.o.b. barge Vicksburg, MS to f.o.b. barge New Orleans, LA. SCNO Barge Lines will provide an average of 8 barges per month starting the week of October 6, 1980 and ending the week of September 28, 1981. Base freight rate is $5.50 NT subject to fuel escalation formula, using a fuel base of 80¢ per gallon. First review on fuel will be November 1, 1980 and every thirty days thereafter.
>
> [Reference to barge freetime, detention charges and other conditions, immaterial for our purposes, on the reverse side of the agreement.]
>
> Acceptance of this agreement shall be effected by returning a signed copy to SCNO BARGE LINES, INC.; however, if a signed copy is not received by SCNO BARGE LINES, INC., the booking of the barge and the loading of the cargo shall constitute an acceptance by you of all the terms and conditions of this agreement.

3. The November 9 letter from Kleitsch to Pierce read as follows:

> I appreciate you [sic] efforts in trying to get our contract in order. When we talked on the phone the other day you mentioned that you thought you had loaded about forty barges. According to our records, a copy of which is enclosed, I show thirty-two barges were loaded. I therefore, showed on the addendum a total of sixty-four barges remaining on the contract.
>
> If you do not agree with our computations, please let me know.
>
> The attached addendum is as follows:
>
> ADDENDUM
>
> The remaining sixty-four (64) barges to be loaded under the original contract will be priced at $7.02 NT and will no longer be subject to the monthly fuel escalation formula.
>
> All other terms and conditions of the original contract remain in effect.

Following these discussions and the transmittal of the letter with the addendum, eight barges were loaded by Anderson Clayton and it paid the contract price of $7.02 per ton.

On December 8, SCNO received a letter from Anderson Clayton stating that the old contract had ended upon its expiration, that a new contract was not desired and that Anderson Clayton would contact SCNO if it had future needs.[4]

When Kleitsch received the letter, he talked to SCNO's Vice President of Marketing, Dennis Friesl. Friesl called Malone at Anderson Clayton, and Malone told him that he had "passed on our agreement to his office in Phoenix" and was advised by legal counsel that they did not feel the agreement was valid. Malone directed Friesl to Anderson Clayton's attorneys for any further information. He also mentioned the impending sale of Anderson Clayton to Bunge Corporation, a large international grain conglomerate that owned its own barges. Evidently the sale to Bunge took place December 15, 1981. Pierce and Malone denied entering into an agreement with SCNO or making a commitment for a specific number of barges.

This action was then brought. A motion in limine was filed by SCNO directed to the five contracts for the years preceding the August 29, 1980 contract. The district court concluded that the earlier agreements should be excluded under the parol evidence rule and because they had no relevance to this case where the plant was sold shortly after the contract was entered into. The case was submitted to the jury under an instruction that required a finding that Anderson Clayton and SCNO had entered into an agreement November 9, 1981, that SCNO agreed to provide 64 barges and Anderson Clayton agreed to use the 64 barges at a rate of $7.02 per net ton, that SCNO had performed its agreement, and

Anderson Clayton failed to perform causing damage to SCNO. The jury returned a verdict of $288,120.00 plus interest of $20,895.00.

**I.**

Anderson Clayton argues that the district court erred in excluding the contracts for the years 1975 through 1980. It argues that the contracts demonstrated a course of dealing between the parties which established its claims that Anderson Clayton had never been bound contractually to take a particular number of barges and that the agreement would never be enforced.

In ruling on the motion in limine, the district court first observed that the UCC did not apply to this transaction and counsel for Anderson Clayton agreed that it did not. In its ruling the district court found that the situation involved in this case was far different from the preceding years because there was a sale of the plant a month after the contract was entered into, and this was not true with respect to any of the earlier five contracts. This dissimilarity in circumstances rendered the evidence inadmissible. The court also concluded that the parol evidence rule was applicable so as to bar the earlier contracts.

The parol evidence rule has been described as a "treacherous bog in the field of contract law." *Chase Manhattan Bank v. First Marion Bank,* 437 F.2d 1040, 1045 (5th Cir.1971). It is a rule of substantive law and not a rule of evidence. *Property Tax Research Co. v. Falstaff Brewing Corp.,* 708 F.2d 1333, 1336 (8th Cir.1983). We need not enter this bog. We believe that the district court did not abuse its discretion in ruling that the earlier contracts were not relevant in this case. Thus, we need not reach the applicability of the parol evidence rule.

---

4. Anderson Clayton's letter read as follows:

After having had the opportunity to get proper counselling on the recently expired contract between SCNO and ACCO; Anderson Clayton's obligations under that contract ended upon its expiration. At this time, we do not desire a new contract. However, if we should be in need of long term commitments in the future, we would like to discuss those commitments with you at that time.

We look forward to doing business with you in the future.

The district court found that the circumstances surrounding the earlier contracts were different from the circumstances which resulted in this suit for breach of contract, because of the sale of the plant. Anderson Clayton argues that the five earlier contracts should have been admitted because they evidence a course of dealing between the parties which proves that Anderson Clayton never intended to commit itself to any specific number of barges and that the agreement was simply to fix a freight rate for a certain period of time. Although evidence of course of dealing is admissible to aid the interpretation of an agreement, *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984); *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. en banc 1979); 4 S. Williston, *A Treatise on the Law of Contracts* § 616 (3d ed. 1961), as Anderson Clayton points out in its brief, such evidence must be relevant to be admissible. *See* Fed.R.Evid. 402. The district court is vested with broad discretion to determine the relevance of proffered evidence. *United States v. Eckmann*, 656 F.2d 308, 312 (8th Cir.1981). Its ruling will not be overturned unless there is a clear and prejudicial abuse of discretion. *Haynes v. American Motors Corp.*, 691 F.2d 1268, 1272 (8th Cir.1982); *see also Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1244 (8th Cir.1983).

According to Anderson Clayton, under the earlier contracts its obligation to use the barges supplied by SCNO was variable depending upon the soybean crop. In this case, however, Anderson Clayton's failure to use the barges had nothing to do with a crop shortage and the consequent shutting down of the plant, but was a result of its selling the plant. The district court concluded that this dissimilarity rendered the evidence of prior course of dealing inadmissible:

> [I]n all the past dealings and contracts of the parties, we did have a situation, did

we not, where the defendant company was in business and maybe they did or didn't take all of the barges, but they were always in business. This case we have where the company sold the operation for which the barges would be intended to be used, is that correct?

> * * * [I]f you're indicating this is more or less of a requirements contract, I found that the circumstances in the past were very much different than they are in this particular situation where I think the parties do indicate to this Court that there was a sale of this [plant] after the first month, and therefore the defendant took no more barges * * *.

> * * * I think it's such a dissimilarity so I am going to proscribe it * * *.

We conclude that the district court's ruling on the motion in limine was not an abuse of discretion. Therefore, we uphold the district court's exclusion of the evidence.

## II.

Anderson Clayton insists that SCNO failed to establish a prima facie case, and therefore the district court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict. In passing upon a motion for directed verdict or judgment notwithstanding the verdict, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party.[5] *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 375 (8th Cir.1983). *J & J Farms, Inc. v. Cargill, Inc.*, 693 F.2d 830, 834–35 (8th Cir.1982); *Giordano v. Lee*, 434 F.2d 1227, 1231 (8th Cir.1970), *cert. denied*, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971). A directed verdict or a judgment notwithstanding the verdict should be granted only "when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving par-

---

**5.** The standards for granting a directed verdict or judgment notwithstanding the verdict are the same under both federal and Missouri law. *Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir.1984). The parties have not raised the question as to whether Mississippi law might differ from federal law in this regard. It appears that the Mississippi courts apply the same standards. *See Miss. Coast Coliseum Comm'n v. Stuart Const. Co.*, 417 So.2d 541, 542–43 (Miss.1982).

ty." *Dace,* 722 F.2d at 375 (quoting *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.,* 523 F.2d 833, 836 (8th Cir. 1975)).

When considered most favorably to SCNO, the evidence presented was sufficient to justify submission of SCNO's breach of contract claim to the jury. As the district court instructed, in order to be successful on a breach of contract claim, a plaintiff must prove that there was an offer and an acceptance, and that thereafter, plaintiff performed as agreed, but defendant failed to perform.

■ In this case SCNO's sales representative, Kleitsch, testified that through several telephone conversations with Pierce, an agreement was reached concerning the use of SCNO barges. Although Pierce contends that he never made an agreement with Kleitsch, such a dispute in testimony is a question for the jury to decide. Friesl, SCNO's Vice President of Marketing, also testified that there was an agreement that SCNO would provide Anderson Clayton with sixty-four barges, approximately eight per month, at $7.02 per net ton. Kleitsch's letter to Pierce with its addendum provides additional evidence that an agreement was reached and sets forth the terms of the agreement. The addendum provided that the terms of the 1980 contract remained in effect, which included that the booking of the barge and the loading of the cargo constituted an acceptance of the agreement. There was no dispute that after the telephone conversations between Kleitsch and Pierce, Anderson Clayton did use eight barges and paid for them at the rate of $7.02 per net ton per barge. Based on this evidence, the jury could have concluded either that there was an oral agreement as a result of the telephone conversations, or that there was a written agreement when the addendum was accepted by Anderson Clayton's subsequent use of the barges.

■ Anderson Clayton's argument that the alleged agreement did not constitute an enforceable contract because it failed to specify a duration is without merit. The duration of the contract can be gleaned from the express terms of the contract as well as from the testimony at trial. Under the addendum, the terms of the 1980 contract remained in effect, including that the barges were to be provided on the basis of an average of eight a month. Friesl testified that the sixty-four barges were to be provided at the rate of approximately eight a month. Simple mathematics compels the conclusion that the contract's duration was approximately eight months.

■ Anderson Clayton also argues that the verdict was excessive and based on speculation. This argument is founded on its contention that the duration was not set forth in the agreement. The damages awarded SCNO equal the contract price that SCNO would have received for the fifty-six unused barges less the amount it would have cost SCNO to complete its performance of the contract. The evidence presented was sufficient to support both the jury's finding that a contract had been made and its calculation of damages. Therefore we affirm the district court's judgment denying Anderson Clayton's motions for a directed verdict and judgment notwithstanding the verdict.

### III.

■■ Anderson Clayton's final contention is that the jury's verdict was against the weight of the evidence. "The argument that the verdict is against the weight of the evidence is one particularly directed to the district court in a motion for new trial under Rule 59 of the Federal Rules of Civil Procedure." *Kelley v. Crunk,* 713 F.2d 426, 427 (8th Cir.1983). A motion for new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court. *Burnett v. Lloyds of London,* 710 F.2d 488, 489–90 (8th Cir. 1983); *see also Rey v. City of Fredericktown,* 729 F.2d 1171, 1174 (8th Cir.1984). "Ordinarily, no error can be predicated upon the denial of such a motion for new trial." *Minnesota Mutual Life Ins. Co. v.*

*Wright,* 312 F.2d 655, 659–60 (8th Cir.1963). We seriously question whether an abuse of discretion by the district court would justify reversal. *See* 11 C. Wright and A. Miller, *Federal Practice & Procedure* § 2819. This, however, is the extent of Anderson Clayton's argument. We find no such abuse in the record before us.

The judgment of the district court is affirmed.