# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1305

_____

Erin Dindinger; Lisa Loring; Elizabeth Freund

*Plaintiffs - Appellees*

v.

Allsteel, Inc.

*Defendant - Appellant*

The Hon Company; Scott Mills

*Defendant*s

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 13, 2016
Filed: April 3, 2017

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

After a five-day trial, a jury found that Allsteel, Inc. (Allsteel) was liable to the plaintiffs Erin Dindinger, Lisa Loring, and Elizabeth Freund for sex-based wage discrimination under the Equal Pay Act, Iowa Civil Rights Act, and Title VII. Allsteel appeals the district court's denial of its motion for a new trial, as well as its grant of the plaintiffs' motions for attorney's fees and costs. We remand the issue of costs to the district court to determine whether it is the prevailing practice in Iowa to bill clients separately for Westlaw research, and affirm in all other respects.

## I. Background

Dindinger, Loring, and Freund worked at Allsteel, a furniture manufacturer. They brought suit against Allsteel on October 10, 2011, alleging that it paid them less than it paid men performing equal work. All three women brought claims of sex-based wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d); Dindinger and Loring also brought claims of sex-based wage discrimination under the Iowa Civil Rights Act, Iowa Code § 216.6A, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; and Loring additionally brought a claim of sex-based discrimination for failure to promote under Title VII.[1] With respect to the Equal Pay Act claims, the earliest possible date for which the plaintiffs could recover damages was either October 11, 2008 (if the violations were proven to be willful) or October 11, 2009 (if the violations were not proven to be willful); with respect to the Iowa Civil Rights Act claims, the earliest date was July 1, 2009; and with respect to Title VII claims the earliest date was October 12, 2009.

---

[1]The plaintiffs also brought other claims that were dismissed prior to trial.

The plaintiffs presented evidence that Dindinger, who was a Safety and Environmental Manager at Allsteel's Panel Plant between 2000 and May 20, 2011, was paid less than two male Safety and Environmental Managers who performed work equal to hers. Allsteel, on the other hand, presented evidence that her work was not equal to that of her male comparators. Allsteel also sought to establish that it paid Dindinger less than her male comparators based on factors other than sex—an affirmative defense to the Equal Pay Act and Iowa Civil Rights Act claims. Specifically, Allsteel presented evidence that Dindinger was paid less based on factors including prior education, outside experience, and seniority.

The plaintiffs presented evidence that Loring, a Safety and Environmental Manager in Allsteel's Component Plant between March 2008 and November 1, 2013, was paid less than two male Safety and Environmental Managers who performed work equal to hers, and that Allsteel denied her a promotion based on sex. Allsteel countered with evidence that she did not perform equal work to her male comparators; that she was paid less based on factors including prior education, outside experience, and seniority; and that she was denied a promotion based on poor job performance.

Finally, the plaintiffs presented evidence that Freund, a Member and Community Relations (MCR) Plant Manager in Allsteel's Distribution Center between April 2008 and December 3, 2009, was paid less than a male MCR Plant Manager whose work was equal to hers. But Allsteel introduced evidence that her work was not equal to that of her male comparator, and that even if it was, she was paid less based on factors including outside experience.

Allsteel additionally sought to establish that it paid the plaintiffs less than their male comparators because of economic conditions. It introduced evidence that it experienced negative effects as a result of the economic recession that began in 2008,

and that, to save costs, it laid off several employees, restructured job responsibilities, and froze merit-based pay raises. Allsteel also presented evidence that even if it did violate the Iowa Civil Rights Act or Equal Pay Act, the violations were not willful—an issue relevant to damages for the Iowa Civil Rights Act claims and to the limitations period for the Equal Pay Act claims. It submitted evidence that the Office of Federal Contract Compliance Programs (OFCCP), a Department of Labor office, had conducted an audit of Allsteel to ensure Allsteel complied with certain requirements for federal contractors, including requirements related to compensating men and women equally. The district court excluded the audit results, but Allsteel was permitted to present other evidence regarding the audit, including evidence about the audit process, the types of data collected and evaluated in the audit, and the conclusions Allsteel personnel reached based on the audit data.

The plaintiffs countered with evidence intended to demonstrate that Allsteel's purported reasons for paying the plaintiffs less than their male comparators and for not promoting Loring were pretextual, and to establish that the alleged Equal Pay Act and Iowa Civil Rights Act violations were willful. Specifically, the plaintiffs submitted evidence that other female Allsteel employees were paid less than male employees despite their comparative seniority, experience, or education; that an email had accidentally been sent to certain Allsteel employees showing that some female employees were paid less than male employees, prompting one female Allsteel employee to file an internal complaint and lawsuit alleging wage discrimination; and that Loring had positive performance reviews until she filed the present lawsuit, at which point she began to receive negative reviews.

At the close of trial, the district court instructed the jury that Allsteel could establish an affirmative defense to the Equal Pay Act and Iowa Civil Rights Act claims if it proved that some factor other than sex justified the pay differentials. However, the court instructed the jury that Allsteel could not rely on economic

conditions such as layoffs, restructuring, or pay raise freezes to establish the affirmative defense.

The jury found in favor of the plaintiffs on all claims except for Loring's failure-to-promote claim. It also found that Allsteel's violations of the Equal Pay Act and Iowa Civil Rights Act were willful. The jury awarded each plaintiff back pay, and awarded Dindinger and Loring damages for past emotional distress and punitive damages for their Title VII claims. After calculating liquidated damages and eliminating duplicative awards, the district court entered judgment for Dindinger in the amount of $61,000, for Loring in the amount of $83,000, and for Freund in the amount of $60,000. Allsteel filed a motion for new trial, arguing that the district court instructed the jury incorrectly on its affirmative defenses and made certain erroneous evidentiary rulings. The plaintiffs, meanwhile, moved for attorney's fees and costs. The district court denied the motion for new trial, and granted the motion for attorney's fees and costs. This appeal followed.

## II. Discussion

### A. Motion for New Trial

Allsteel contends it is entitled to a new trial on the grounds that the district court abused its discretion by: (1) instructing the jury Allsteel could not rely on economic conditions as a factor other than sex justifying the wage differentials; (2) allowing the plaintiffs to present certain "me-too" evidence about other female employees who were paid less than male employees; (3) excluding the results of the OFCCP audit; and (4) allowing testimony indicating that Allsteel retaliated against Loring for filing the present lawsuit. "We review the denial of a motion for a new trial for a 'clear' abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." Hallmark Cards, Inc. v. Murley, 703

F.3d 456, 462 (8th Cir. 2013) (quoting <u>Harrison v. Purdy Bros. Trucking Co.</u>, 312 F.3d 346, 351 (8th Cir. 2002)).

### 1.    Jury instruction

First, Allsteel argues that it is entitled to a new trial because the district court incorrectly instructed the jury that Allsteel could not rely on economic conditions to establish its affirmative defense that a factor other than sex justified the pay discrepancies between the plaintiffs and their male comparators. "We review the jury instructions given by a district court for an abuse of discretion." <u>Brown v. Sandals Resorts Int'l</u>, 284 F.3d 949, 953 (8th Cir. 2002). "Our review is limited to whether the jury instructions, taken as a whole, 'fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.'" <u>Id.</u> (quoting <u>Ford v. GACS, Inc.</u>, 265 F.3d 670, 679 (8th Cir. 2001)). And "even where a jury instruction is erroneously given to the jury, reversal is warranted only where the error affects the substantial rights of the parties." <u>Id.</u>

To establish a claim of sex-based wage discrimination under the Equal Pay Act or Iowa Civil Rights Act,[2] "a plaintiff must show by a preponderance of the evidence that (1) she was paid less than a male employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility, (3) which were

---

[2]The parties do not dispute that sex-based wage discrimination claims under the Iowa Civil Rights Act are substantively identical to sex-based wage discrimination claims under the Equal Pay Act for the purposes of the jury-instruction issue. Compare Iowa Code § 216.6A(b) with 29 U.S.C. § 206(d)(1); see Dindinger v. Allsteel, Inc., 860 N.W.2d 557, 564–65 (Iowa 2015) (explaining that the wording of Iowa Code § 216.6A is similar to the Equal Pay Act, and drawing on federal courts' interpretations of the Equal Pay Act to interpret § 216.6A). Accordingly, we consider the Equal Pay Act and Iowa Civil Rights Act claims together.

performed under similar working conditions." Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002). But even if a plaintiff proves all three elements, an employer may establish an affirmative defense by demonstrating that "different payment to employees of opposite sexes 'is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" Corning Glass Works v. Brennan, 417 U.S. 188, 196 (1974) (quoting 29 U.S.C. § 206(d)(1)).

One way Allsteel endeavored to prove an affirmative defense was by seeking to establish that economic conditions were a "factor other than sex" justifying the pay differentials. It offered testimony that it began to feel the effects of the economic recession in October 2008. To save costs, it implemented several rounds of layoffs between October or November 2008 and June 2009, restructured job responsibilities, and imposed a freeze on merit-based pay raises from January 2009 through March 2010.

After the close of the evidence, the district court instructed the jury:

If you find [the plaintiff] proved all three elements of an Equal Pay Act claim by a preponderance of the evidence, you must next consider whether Allsteel then proved, by a preponderance of the evidence, that any difference in pay between [the plaintiff] and one or more male employees performing substantially equal work under similar working conditions was not because [the plaintiff] was female, but was instead due to a factor other than sex. Factors other than sex could include job performance, education, experience, or tenure with the company. However, for this exception to apply [the plaintiff]'s sex must have played no role in the wage difference.

Allsteel cannot rely upon market forces or economic conditions as a factor other than sex to justify any pay differential complained of by [the

plaintiff]. These market forces and economic conditions include downsizing, reductions in force, restructuring, and economic downturns. If the pay differential complained of by [the plaintiff] was based in any part upon her sex, market forces and economic conditions cannot justify perpetuation of that differential. It is not a defense under the Equal Pay Act that a woman may be paid less than a man in the same position simply because the woman is willing to accept less pay, or because the man demands more pay.[3]

With respect to Dindinger's and Loring's claims under the Iowa Civil Rights Act, the district court further instructed the jury: "Just as under the Equal Pay Act, market forces and economic conditions are not a defense under Section 216.6A of the Iowa Civil Rights Act."

Allsteel objected to the instructions before they were given, arguing that, in fact, economic conditions could be a factor other than sex justifying the pay differentials. But the district court concluded that the instructions were correct because Allsteel's proposed economic-conditions defense was inconsistent with the Supreme Court's decision in Corning Glass Works v. Brennan. In Corning Glass, the Supreme Court held that it is not a defense under the Equal Pay Act that an employer pays women less than men "simply because men would not work at the low rates paid women" and market forces therefore dictated lower wages for women. 417 U.S. at 205. The Court explained: "That the company took advantage of such a situation may be understandable as a matter of economics, but its differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work." Id.

---

[3]The district court gave this instruction for Dindinger's Equal Pay Act claim, and later incorporated it into its instructions for Loring's and Freund's Equal Pay Act claims.

Allsteel contends that the district court erred in equating its economic-conditions defense to the market-forces defense at issue in Corning Glass. In Allsteel's view, Corning Glass' holding is limited to cases where employers pay female employees less solely because women are willing to accept less pay than men, and does not apply to all affirmative defenses based on economic forces. Allsteel points to several district court cases to support this argument. For example, in Brokaw v. Weiser Security, an employer presented evidence that it paid a newly hired female manager less than it had paid her male predecessor because its revenues had declined between the hiring of the male manager and the hiring of the female manager. 780 F. Supp. 2d 1233, 1252 (S.D. Ala. 2011). The district court concluded this evidence established an affirmative defense, explaining: "It cannot be gainsaid that an employer may lawfully pay a new manager less money when the branch's revenues are far lower than they were when the old manager's pay was set." Id.; see also, e.g., Joyner v. Town of Elberta, 22 F. Supp. 3d 1201, 1209 (S.D. Ala. 2014) (suggesting a decline in revenue could be a factor other than sex justifying paying an employee less than her predecessor); Flockhart v. Iowa Beef Processors, Inc., 192 F. Supp. 2d 947, 972 (N.D. Iowa 2001) (finding that comparing the wages of a female employee with those of a male employee who held the same position three years later was inapt because the company raised the standard wage for the relevant job classification in the meantime).

But even if we were to agree that economic conditions could be a factor other than sex justifying a pay differential in some circumstances, Allsteel did not present evidence to establish such a defense here. Allsteel points out that the economic downturn caused layoffs, the restructuring of job duties, and a freeze of merit-based pay raises. But Allsteel offered no evidence at trial showing how these cost-saving measures caused the plaintiffs to be paid less than their male comparators. No evidence suggested that the layoffs and job restructuring had any effect on the wages of the plaintiffs or their male comparators. And to the extent the merit-based pay

raise freeze affected wages, the evidence demonstrates that it did not cause the plaintiffs to be paid less than their male comparators, but merely held pre-existing wage differentials in place. See Taylor v. White, 321 F.3d 710, 718 (8th Cir. 2003) ("[I]t is important to ensure that reliance on past salary is not simply a means to perpetuate historically lower wages.").

"[T]he purpose of giving instructions is to inform the jury of the essential issues before them and of the various permissible ways of resolving those issues." Fed. Enters. v. Greyhound Leasing & Fin. Corp., 786 F.2d 817, 820 (8th Cir. 1986). Accordingly, we do not review jury instructions in a vacuum, but "in light of the issues presented to the jury in a particular case." Brown, 284 F.3d at 953 (quoting Ford, 265 F.3d at 679). Because Allsteel did not present evidence that economic conditions caused the pay differentials the plaintiffs experienced, the district court did not abuse its discretion in instructing the jury that Allsteel could not rely on economic conditions to establish an affirmative defense. See Fed. Enters., 786 F.2d at 820 (explaining that a "party is entitled to an instruction reflecting that party's theory of the case" only if "there is evidence to support it"). Rather, the instructions given fairly and accurately represented the law in light of the evidence in the case.

## 2. Me-too evidence

Next, Allsteel argues a new trial is warranted based on the admission of "me-too" evidence—evidence that other female Allsteel employees who are not parties to the case were also paid less than male Allsteel employees. Specifically, it challenges the introduction of evidence relating to Margaret Bartenhagen, Kim Dezeeuw, and Valerie Nissen—who, together with Dindinger and Loring, represented all but one of the female managerial employees in Operations at Allsteel between 2000 and 2013 other than Human Resources employees. It also challenges testimony of Stephanie Stammer and Michelle Mattingly—both group leaders at Allsteel—who said they had

accidentally been emailed salary information showing that some female employees were paid less than male employees. As a result, Mattingly testified, she filed an internal complaint and a lawsuit against Allsteel alleging wage discrimination. Allsteel moved before trial to exclude all of the me-too evidence, but the district court denied the motion, and overruled objections Allsteel made to the evidence during trial.[4]

We review the district court's admission of evidence for abuse of discretion. Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010). "[E]videntiary rulings should only be overturned if there was a 'clear and prejudicial abuse of discretion.'" US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009) (quoting Haynes v. Am. Motors Corp., 691 F.2d 1268, 1272 (8th Cir. 1982)). The Supreme Court has held that me-too evidence is "neither *per se* admissible nor *per se* inadmissible" under Federal Rules of Evidence 401 and 403. Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 380 (2008). Rather, "[r]elevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case." Id. at 387. The question of whether me-too evidence is relevant therefore "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Id. at 388.

We have previously held that me-too evidence "should normally be freely admitted at trial" because "an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination." Hawkins v. Hennepin Tech. Ctr., 900 F.2d

---

[4]The plaintiffs contend that because Allsteel did not object to all of the me-too evidence adduced at trial, it has waived its right to challenge the evidence on appeal. Because we find the district court did not abuse its discretion in admitting the evidence, we need not consider the issue of waiver.

153, 155–56 (8th Cir. 1990); accord Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1105 (8th Cir. 1988) (concluding the district court abused its discretion in excluding circumstantial evidence of the employer's discriminatory animus, including statistics about how often the employer hired and promoted black employees), overruled in part on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

Initially, Allsteel argues that the district court did not engage in case-by-case analysis of the evidence, as Sprint/United requires, but instead admitted it wholesale. We disagree. In its order on Allsteel's motion in limine, the district court, citing Sprint/United, considered whether evidence of each woman's experience was sufficiently related to the plaintiffs' theory of the case. In particular, the district court noted that all of the other female employees were alleged to have experienced sex-based wage discrimination that occurred relatively close in time to the wage discrimination the plaintiffs alleged. This analysis demonstrates that the district court appropriately considered whether the evidence about each of the other female employees was relevant to the plaintiffs' claims.

Next, Allsteel argues that the district court erred in admitting the me-too evidence with respect to Bartenhagen, Dezeeuw, Nissen, Stammer, and Mattingly. First, Allsteel argues that the district court erred in admitting the me-too evidence regarding Bartenhagen, who testified that she was a factory manager in the Panel Plant in Operations between 2003 and November 2008, and that she was paid less than male factory managers who had less seniority than she did. In Allsteel's view, Bartenhagen's testimony was irrelevant to the plaintiffs' claims, because she did not hold the same position as any of the plaintiffs, she was not involved in supervising the plaintiffs or setting their wages, and her employment overlapped only a few weeks with the plaintiffs' recovery period.

However, in determining whether Bartenhagen's testimony was admissible under Rule 401, the key question is not whether she was similar to the plaintiffs in every way,[5] but whether her testimony was relevant "in the context of the facts and arguments" in the case. Sprint/United, 552 U.S. at 387. Bartenhagen's testimony tended to demonstrate that Allsteel did not uniformly set the wages of more senior employees higher than the wages of less senior employees. Thus, the testimony was relevant to rebut Allsteel's affirmative defense that Dindinger and Loring were paid less than their male comparators because they had less seniority. The fact that Bartenhagen's employment ceased shortly after the recovery period began did not render her testimony irrelevant. As we have previously explained, "[e]vidence of wage discrimination need not be confined to the [Equal Pay Act]'s . . . limitation period . . . for a court may consider relevant evidence from before that period while assessing the worker's claims." Price v. N. States Power Co., 664 F.3d 1186, 1191 (8th Cir. 2011). Accordingly, the district court did not err in admitting Bartenhagen's testimony.

Allsteel also contends that the evidence that Dezeeuw and Nissen were paid less than male managers was irrelevant and should have been excluded. Dezeeuw worked as a group supply chain manager and as a factory manager in Operations from 2009 until at least 2012, and the plaintiffs presented evidence she was paid less than a male manager who had less seniority than she did, and who reported to her. Nissen

---

[5]In its reply brief, Allsteel asserts that me-too evidence is admissible only if the other employee is "similarly situated in all relevant aspects" to the plaintiff. But that standard applies to evidence that a plaintiff has been treated differently from another employee who is not part of the protected class. Harris v. Chand, 506 F.3d 1135, 1140–41 (8th Cir. 2007). Me-too evidence, in contrast, is evidence that other employees who were part of the same protected class as the plaintiff were also discriminated against. See Sprint/United, 552 U.S. at 386 (explaining that me-too evidence is "a very different kind of evidence" from differential treatment evidence).

worked as a factory manager in Operations from 2008 to 2010, and the plaintiffs presented evidence that she was paid less than male factory managers who had less education than she did. Allsteel points out neither Dezeeuw nor Nissen held the same position as any of the plaintiffs, was involved in setting the plaintiffs' pay, or lodged pay discrimination complaints against Allsteel.

But, similar to Bartenhagen, the evidence regarding Dezeeuw and Nissen tended to show that Allsteel did not uniformly pay higher wages to employees with more seniority and education. Thus, the evidence was probative of whether Allsteel's explanation that it paid Dindinger and Loring less than their male comparators based on seniority and education was pretextual, and the district court did not err in admitting it.

Finally, Allsteel challenges the testimony of Stammer, who was a group leader at Allsteel from 2003 to 2007, and of Mattingly, who was a group leader beginning in 2007. Each woman testified that in 2007, she was mistakenly sent an email listing salary information for some group leaders and managers, which showed that female group leaders and managers (including Stammer and Mattingly) were paid less than male group leaders and managers. Stammer testified that she did not complain about her pay after receiving the email. Mattingly testified that she did file an internal complaint, but that Allsteel did not change its pay practices. In 2009, Mattingly filed a complaint with the Iowa Civil Rights Commission, as well as a lawsuit, asserting violations of the Equal Pay Act. According to Mattingly, Allsteel took no remedial action in response.

Allsteel argues that evidence relating to Stammer was irrelevant because she did not hold the same position or report to the same supervisors as any of the plaintiffs, was not employed at Allsteel during the recovery period, and did not file a complaint about her pay. It argues the evidence relating to Mattingly was irrelevant

-14-

because she did not hold the same positions or report to the same supervisors as any of the plaintiffs, she did not review the plaintiffs' performance, her internal complaint was filed before the recovery period, and neither her complaint nor her lawsuit addressed the pay of the plaintiffs or their male comparators. Even so, their testimony was relevant to show that Allsteel was aware that its female managers were paid less than its male managers, and that this could be a violation of state and federal law—evidence that is probative of whether Allsteel willfully violated the Iowa Civil Rights Act or Equal Pay Act. See Simpson v. Merchants & Planters Bank, 441 F.3d 572, 580 (8th Cir. 2006) (explaining that a violation of the Equal Pay Act is willful if the employer "act[ed] knowingly or with reckless disregard of whether the contested conduct was prohibited"). Thus, the district court did not err in admitting the me-too evidence relating to Stammer and Mattingly.

### 3. Audit evidence

Next, Allsteel argues that it is entitled to a new trial because the district court erred in excluding under Federal Rule of Evidence 403 the results of an audit of Allsteel's pay practices conducted by the OFCCP. In reviewing a district court's decision whether to admit evidence under Rule 403, "our task is not to reweigh the prejudicial and probative elements of the evidence, but rather to determine if the district court clearly abused its discretion." Williams v. Neb. State Penitentiary, 57 F.3d 667, 670 (8th Cir. 1995). Additionally, "in an employment discrimination case the admission of administrative findings, such as an EEOC reasonable cause determination, is to be left to the sound discretion of the trial court," particularly when the "employment discrimination claim is tried to a jury." Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304, 1309 (8th Cir. 1984).

Before trial, the plaintiffs filed a motion in limine to exclude two letters Allsteel had received from the OFCPP about the audit results. Allsteel agreed not to

offer the letters, but argued that it was entitled to offer other evidence about the audit. The district court ruled that Allsteel would be permitted to present evidence about the audit in general, but it would not be allowed to offer any evidence about the results of the audit because the unfair prejudicial effect of such evidence would outweigh its probative value.

At trial, Allsteel presented evidence that because it is a government contractor, it is subject to audits of its compensation practices by the OFCCP, and that the OFCCP conducted such an audit in 2012. To comply with the audit, Allsteel collected compensation data from 2010 and 2011, including information about the relative pay of male and female employees. Cherie McClusky, a manager in Human Resources, testified that she helped collect data for the 2012 audit, and that based on her review of the data, she did not believe Allsteel had a problem with pay disparities between male and female employees. Allsteel's in-house counsel Rebecca Schmidt testified that she provides legal counsel to Allsteel regarding compliance with the OFCCP's requirements, and that Allsteel did not change its compensation practices after the 2012 audit.

Allsteel also made offers of proof to establish that, but for the district court's order excluding the audit results, it would have presented evidence that OFCCP uncovered no violations during the audit; that Allsteel had never been barred from selling furniture to the federal government; that the federal government had never told Allsteel that too few women worked in its manufacturing facility; and that no court, consultant, or anyone associated with the state or federal government had informed Allsteel that its pay practices have a discriminatory impact on women.

In Allsteel's view, the district court abused its discretion in excluding evidence about the results of the audit because the results were probative of whether Allsteel willfully violated the Equal Pay Act and Iowa Civil Rights Act, and whether sex was

a motivating factor in determining Dindinger's and Loring's pay—an element of their Title VII wage discrimination claims. Allsteel contends that this evidence was especially important because the plaintiffs presented evidence to show that Allsteel willfully violated the Equal Pay Act—in particular, Mattingly's testimony that Allsteel took no action in response to her complaints and lawsuit.

We decline to disturb the district court's exercise of its sound discretion to limit Allsteel's ability to offer evidence regarding the audit. To begin with, we agree that admitting the OFCCP's findings would be unfairly prejudicial because it would suggest to the jury that an official fact-finding body had already decided whether Allsteel had violated the Equal Pay Act. This would create the risk that the jury would rely on the OFCCP's results instead of its own judgment in determining whether the plaintiffs had proven their claims. See Johnson, 734 F.2d at 1309 ("To admit the report under these circumstances would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw."). Further, the audit results had limited probative value because Allsteel was otherwise permitted to introduce a significant amount of evidence about the audit and the conclusions Allsteel personnel reached based on it. See Fed. R. Evid. 403 advisory committee's note to 1972 rules ("The availability of other means of proof may also be an appropriate factor" to consider in deciding whether to exclude evidence). Accordingly, the district court did not abuse its discretion in excluding the audit results.

### 4. Retaliation evidence

Allsteel next argues that it is entitled to a new trial because the district court erred "by permitting Plaintiff Lisa Loring to introduce evidence that Allsteel's conduct toward her was motivated by a retaliatory animus." Specifically, Allsteel points to particular testimony from Timothy Mattes, who was Loring's supervisor,

Douglas Baker, who was an MCR Manager, and Loring herself. Allsteel contends that because Loring never alleged a retaliation claim against Allsteel, the evidence was irrelevant under Rule 401 and should have been excluded. "[E]videntiary rulings should only be overturned if there was a 'clear and prejudicial abuse of discretion.'" US Salt, 563 F.3d at 690 (quoting Haynes, 691 F.2d at 1272).

First, Allsteel contends that the district court erred in allowing the plaintiffs to ask Mattes (1) whether Loring received negative performance reviews after she filed the present lawsuit, and (2) whether she claimed she had been "bullied" after she filed the present lawsuit. This questioning, Allsteel submits, was irrelevant and improperly suggested Allsteel retaliated against Loring. But Allsteel's characterization of the testimony at issue omits crucial context. The questioning Allsteel challenges occurred during the plaintiffs' redirect examination of Mattes. During Allsteel's cross-examination, Mattes testified in part that Loring did not receive a promotion she had sought because her job performance and leadership skills were lacking. He further testified that Loring had received poor performance reviews, and that she often characterized negative feedback as "bullying." Because Mattes' testimony suggested that Loring was not promoted because of problems with performance and accepting feedback, the plaintiffs were entitled to attack the reliability of that testimony by asking questions about the timing of the purported problems. Thus, the evidence was relevant to the question of whether Allsteel failed to promote Loring based on sex, and the district court did not abuse its discretion in admitting it.

Second, Allsteel argues the plaintiffs "returned to [the] theme" of retaliation when they cross-examined Baker "and implied a direct connection between an evaluation of Loring's performance and the filing of this lawsuit." But, again, the questions at issue were relevant to rebut Allsteel's suggestion that Loring was not promoted because of her performance. In its direct examination of Baker, Allsteel asked him about a document he prepared recounting a conversation with Loring.

-18-

According to the document, she told him that she had decided not to resign from Allsteel based on her attorney's advice, but that she was unhappy with certain aspects of her job. In the portion of the cross-examination Allsteel challenges, the plaintiffs asked Baker whether he prepared the document before or after the lawsuit was filed. Accordingly, the district court did not err in admitting the testimony.

Finally, Allsteel contends that Loring improperly "suggested that she had been the victim of retaliation." In the portion of the testimony Allsteel cites, Loring testified—without objection—that when she worked at Allsteel, she felt overwhelmed and wanted a raise, and that she felt Allsteel became more critical of her performance in 2013. Similar to the plaintiffs' questioning of Mattes and Baker, Loring's testimony was relevant to undermine Allsteel's evidence that the reason Loring was not promoted was her poor performance. Thus, the district court did not err in admitting it.

## B. Fees

Allsteel next contends that the district court erred in granting the plaintiffs "nearly all" of the attorney's fees they requested, despite their "limited success" on their Iowa Civil Rights Act claims. The plaintiffs moved for $302,652 in attorney's fees. Allsteel argued that the figure should be reduced, in part because the plaintiffs failed to recover "a collective twelve years of [Iowa Civil Rights Act] claims that were time-barred." The district court ultimately awarded the plaintiffs attorney's fees of $269,877.67, after reducing the figure sought by the plaintiffs on various other grounds. But it rejected Allsteel's argument that a further reduction was warranted for the Iowa Civil Rights Act claims. Allsteel argues on appeal that this was error.

We review a district court's award of attorney's fees for abuse of discretion, "but its rulings on issues of law are reviewed de novo." Fish v. St. Cloud State Univ.,

295 F.3d 849, 851 (8th Cir. 2002). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Id. at 851; see Dutcher v. Randall Foods, 546 N.W.2d 889, 897–98 (Iowa 1996) ("[W]e adopt the federal analytical framework for the calculation of attorney fees under the Iowa Civil Rights Act."). The district court should then take account of "other considerations that may lead [it] to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). In considering how the "results obtained" should affect attorney's fees, courts are to consider two questions. Id. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Id. "Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.'" Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting Hensley, 461 U.S. at 435).

In their complaint, Loring and Dindinger sought back pay under the Iowa Civil Rights Act for the entire time during which each allegedly experienced wage discrimination. Allsteel moved for partial summary judgment, arguing in part that because Iowa Code § 216.6A went into effect on April 28, 2009, the plaintiffs could not recover damages under § 216.6A for wage discrimination allegedly occurring before that date. On Allsteel's motion, the district court certified the question to the Iowa Supreme Court. The district court also noted that the plaintiffs could possibly claim wage discrimination under another provision of the Iowa Civil Rights Act, Iowa Code § 216.6.[6] Thus, on its own motion, the district court also certified the question

---

[6]Iowa Code § 216.6(1)(a) makes it "an unfair or discriminatory practice" for an employer to "discriminate in employment against any applicant for employment or any employee because of the . . . sex . . . of such applicant or employee, unless

of whether and for what time period the plaintiffs could recover damages for wage discrimination under § 216.6.

On the first question, the Iowa Supreme Court held that Iowa Code § 216.6A went into effect on July 1, 2009, and that the plaintiffs could recover damages under § 216.6A only for discrimination occurring after that date. Dindinger, 860 N.W.2d at 566. On the second question, the Iowa Supreme Court held that the plaintiffs could collect damages under Iowa Code § 216.6 for wage discrimination occurring within 300 days of filing an administrative complaint. Id. at 575–76. Based on these rulings, the district court granted summary judgment to Allsteel to the extent Dindinger and Loring sought damages under Iowa Code § 216.6A for discrimination occurring before July 1, 2009, or under Iowa Code § 216.6 for discrimination occurring more than 300 days before they filed their administrative complaints. As recounted above, the jury ultimately found in favor of Dindinger and Loring on their Iowa Code § 216.6A claims. Dindinger and Loring elected not to pursue wage discrimination claims under Iowa Code § 216.6.

Allsteel argues that the district court abused its discretion in not granting a reduction in attorney's fees for the Iowa Civil Rights Act claims for several reasons. First, Allsteel argues that the district court should have reduced the attorney's fees to reflect the plaintiffs' lack of success on the questions the district court certified to the Iowa Supreme Court. Allsteel cites Arneson v. Callahan, 128 F.3d 1243 (8th Cir.

---

based upon the nature of the occupation." Iowa Code § 216.6A(2)(b) makes it "an unfair or discriminatory practice" when "a discriminatory pay decision or other practice is adopted, when an individual becomes subject to a discriminatory pay decision or other practice, or when an individual is affected by application of a discriminatory pay decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

1997), for the proposition that a party that is unsuccessful on appeal is not entitled to recover attorney's fees for the work performed on the appeal. Allsteel contends that because a certified question of law is similar to an appeal, the district court therefore should have excluded fees for the work performed on the certified questions. However, this argument misconstrues Arneson. In Arneson, we reversed the district court's grant of the appellee's post-trial claims for prejudgment interest and a tax enhancement award. Arneson, 128 F.3d at 1247. Because the appellee was no longer the prevailing party with respect to those claims, and because those claims were "distinct and unrelated to" the claims the appellee had prevailed on, we remanded to the district court to redetermine attorney's fees. Id. at 1248–49. In other words, Arneson merely instructed the district court on remand to update its calculation of attorney's fees, recognizing its discretion to do so in light of the results of the appeal. It did not hold that a party can never recover attorney's fees for work on an ultimately unsuccessful appeal.

Second, Allsteel argues that denying attorney's fees is appropriate under the Hensley test because the plaintiffs "failed to prevail on claims that were unrelated to the claims on which [they] succeeded." Allsteel contends that under the Iowa Civil Rights Act, each separate instance of wage discrimination is a discrete, independent claim—such that "a new cause of action accrues with the issuance of each alleged discriminatory paycheck." Further, Allsteel argues, the "discrete" Iowa Code § 216.6A claims that accrued before July 1, 2009, are unrelated to those that accrued after July 1, 2009, because the "core group of facts" surrounding each paycheck varied over time, and because the claims that accrued before July 1, 2009 were dismissed based on their "time-barred nature" rather than on their merits. We disagree. Even assuming that each paycheck represents a separate claim under Iowa Code § 216.6A, the claims that accrued before July 1, 2009, are inextricably related to those that accrued after that date, because they all involve the same course of conduct, and are all based on the same legal theory.

Finally, Allsteel argues that Dindinger and Loring did not "achieve a level of success that makes the hours reasonably expended a satisfactory basis" for an award of attorney's fees. Allsteel points out that Dindinger and Loring were ultimately able to recover only a fraction of the back pay and liquidated damages they asserted they were entitled to in their responses to Allsteel's interrogatories. But we have previously rejected the argument that "the percentage of attorney's fees awarded should reflect the percentage of relief obtained versus that sought" in civil rights cases because doing so "would discourage litigants with small amounts of damages from pursuing a civil rights claim in court." Simpson v. Merchants & Planters Bank, 441 F.3d 572, 580–81 (8th Cir. 2006). Accordingly, the district court did not abuse its discretion in not reducing the plaintiffs' attorney's fees for Dindinger's and Loring's Iowa Civil Rights Act claims.

## C. Costs

Allsteel argues that the district court abused its discretion in awarding the plaintiffs costs for a RealTime transcript feed, redundant deposition transcripts and video depositions of the same witnesses, and Westlaw research fees. "We review de novo the legal issues related to . . . costs and review for abuse of discretion the actual award of . . . costs." Thompson v. Wal-Mart Stores, Inc., 472 F.3d 515, 516 (8th Cir. 2006). Under Federal Rule of Civil Procedure 54(d), "[a] prevailing party is presumptively entitled to recover all of its costs." In re Derailment Cases, 417 F.3d 840, 844 (8th Cir. 2005). "However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization." Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006).

First, Allsteel argues that costs for the RealTime transcript feed should be vacated because the feed was not necessary for the case. The district court awarded the RealTime transcript costs to the plaintiffs under 28 U.S.C. § 1920(2), which

provides that "[a] judge or clerk of any court of the United States may tax as costs . . . [f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." But "[b]efore awarding such costs, the court should determine that transcripts were not obtained primarily for the convenience of parties but were necessary for use in the case." McDowell v. Safeway Stores, Inc., 758 F.2d 1293, 1294 (8th Cir. 1985) (per curiam). The district court determined that the transcript feed was necessary because the case raised complex issues, and the district court had required counsel to research issues of law and prepare additional filings during the trial. We conclude that this determination—which the district court was particularly well-situated to make—was not an abuse of discretion.

Second, Allsteel argues that the district court erred in awarding costs for both printed transcripts and video recordings for the depositions of five witnesses, because the video recordings were redundant to the printed transcripts, and the plaintiffs never introduced the recordings at trial. Allsteel cites a district court case ruling that under 28 U.S.C. § 1920, a party may recover costs for printed transcripts *or* video recordings of depositions, but not both. But we have held that § 1920(2) "permits taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case." Stanley v. Cottrell, Inc., 784 F.3d 454, 466–67 (8th Cir. 2015). In any event, the district court did not award the costs for the transcripts and recordings of the depositions under 28 U.S.C. § 1920; it awarded them under the fee-shifting provisions of the Equal Pay Act, 29 U.S.C. § 216(b), Iowa Civil Rights Act, Iowa Code § 216.15(9)(a)(9), and Title VII, 42 U.S.C. § 2000e-5(k). Allsteel does not argue that a court may not award costs for both printed transcripts and video recordings of depositions under the relevant fee-shifting provisions of the civil rights statutes. Thus, the district court did not abuse its discretion in awarding those costs.

Third, Allsteel argues that the district court erred in awarding costs for Westlaw research, because computerized legal research (CLR) costs are not recoverable as costs. It cites our decision in Leftwich v. Harris–Stowe State College, which held "that computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award." 702 F.2d 686, 695 (8th Cir. 1983). But after the parties in this case submitted their briefs, we held pursuant to an intervening Supreme Court case that "if the prevailing party demonstrates that separately billing for CLR is the 'prevailing practice in a given community' and that such fees are reasonable, the district court may award those costs." Hernandez v. Bridgestone Ams. Tire Operations, LLC, 831 F.3d 940, 950 (8th Cir. 2016) (quoting Missouri v. Jenkins, 491 U.S. 274, 287 (1989)). Because the district court did not have the benefit of Hernandez at the time it calculated costs, we remand the issue of costs with instructions to determine whether charging clients separately for Westlaw research is the "prevailing practice" in Iowa.

## III. Conclusion

We remand the issue of costs to the district court to determine whether it is the prevailing practice in Iowa to bill clients separately for Westlaw research, and affirm in all other respects.

_____